Margaret S. BEATTIE, Plaintiff
Below, Appellant,

v.

Michael C. BEATTIE, Defendant
Below, Appellee.

Supreme Court of Delaware.

Submitted: April 6, 1993.
Decided: July 29, 1993.
Corrected: Sept. 21, 1993.

John G. Mulford (argued), and Richard L. Abbott, Theisen, Lank Mulford & Goldberg, P.A., Wilmington, for appellant.

Susan L. Parker (argued), and Kathleen M. Miller, Smith, Katzenstein & Furlow, Wilmington, for appellee.

James J. Woods, Jr. (argued), Wilmington, amicus curiae on behalf of the Delaware Trial Lawyers Ass'n.

Barbara J. Gadbois (argued), Wilmington, amicus curiae on behalf of the Women and the Law Section of the Delaware State Bar Ass'n.

Wayne A. Marvel (argued), Wilmington, amicus curiae on behalf of the Defense Counsel of Delaware.

Before VEASEY, C.J., HORSEY, MOORE, WALSH and HOLLAND, JJ., constituting the Court en Banc.

VEASEY, Chief Justice:

In this case we review a decision of the Superior Court granting defendant hus-

band's motion for summary judgment in a negligence action initiated by his plaintiff wife. She is seeking damages for paralyzing injuries she sustained in an automobile accident where her husband was the driver. The trial court properly followed the prior precedents of this Court and relied on the common law doctrine of interspousal immunity ("the Doctrine") which prevents one spouse from suing the other in tort. We have concluded, however, that the Doctrine is no longer a viable concept and no longer meets the needs of modern society. Accordingly, we hereby overrule our prior precedents and **REVERSE** and **REMAND** to the Superior Court for proceedings not inconsistent with this opinion.

## I. FACTS

On July 15, 1991 defendant-appellee, Michael Beattie ("Husband"), struck the back of a slow moving truck engaged in weed spraying operations on the median of Route 1 near Milford, Delaware. At the time of the collision he was driving a 1991 Oldsmobile Cutlass in which his wife, plaintiff-appellant, Margaret Beattie ("Wife"), was a passenger. His wife sustained serious injuries in the accident which have rendered her a quadriplegic. Her medical bills and expenses are in excess of $286,-000. On December 17, 1991, Wife filed a negligence action against her Husband.[1] At the time of the accident, he was covered by a substantial liability insurance policy on the vehicle. Despite the suit, the Beatties have remained married and have no plans to divorce.

## II. PROCEEDINGS IN THE SUPERIOR COURT

On February 25, 1992, Husband filed a motion for summary judgment against his wife claiming that the Doctrine barred her negligence claim. The trial court granted the motion, but requested that an amended motion for summary judgment be filed.

On June 23, 1992, the Superior Court issued an order granting the amended motion for summary judgment.[2] Thereafter, the wife appealed the decision. Following oral argument before a panel of three justices, the matter was scheduled for re-hearing *en Banc* and *amicus curiae* briefing was permitted. The sole issue before this Court is whether the Doctrine should be abrogated and, if so, to what extent.

## III. RATIONALE OF THE TRIAL COURT'S DECISION

The trial court's decision granting summary judgment is based upon the Doctrine. This antiquated doctrine was first applied by Delaware courts in the seminal case of *Plotkin v. Plotkin*, Del.Super., 32 Del. 455, 125 A. 455 (1924). In *Plotkin*, the Superior Court adopted the Doctrine primarily on the belief that upon marriage, the identity of the wife merged with that of the husband. The Doctrine's continued existence in Delaware since 1924 has been justified as a means of promoting family harmony and discouraging collusion and fraud upon insurance companies. *Saunders v. Hill*, Del.Supr., 57 Del. 519, 202 A.2d 807, 808 (1964) (the "absolute legal unity of husband and wife has been substantially eroded by the Married Women's Property Acts" and instead the Doctrine is justified as a means to promote family harmony and discourage collusion and fraud). After most recently reviewing the Doctrine in 1979, this Court held that "it retains sufficient merit to warrant continued adherence." *Alfree v. Alfree*, Del.Supr., 410 A.2d 161, 162 (1979).

## IV. STANDARD AND SCOPE OF REVIEW

■ The issue is whether the Doctrine remains a viable concept in Delaware jurisprudence. The trial court's decision is supported by existing Delaware case law which recognizes the antiquated Doctrine.

1. Also named as defendants were Asplundh Tree Expert Co. and Robert L. Boyles, the owner and operator, respectively, of the truck with which the Beattie vehicle collided.

2. While the Superior Court requested that an amended motion for summary judgment be filed encompassing a cross-claim asserted by codefendants Boyles and Asplundh, the Superior Court ultimately declined to grant summary judgment as to that cross-claim.

The validity of the Doctrine has been called into question. Accordingly, this issue poses a legal question which is subject to *de novo* review. *Fiduciary Trust Co. v. Fiduciary Trust Co.*, Del.Supr., 445 A.2d 927, 930 (1982); *Duvall v. Charles Connell Roofing*, Del.Supr., 564 A.2d 1132 (1989).

## V. ABROGATION OF THE DOCTRINE

 It is well settled that the judiciary has the power to overturn judicially-created doctrine, so long as that doctrine has not been codified in a statute. *Duvall v. Charles Connell Roofing*, Del.Supr., 564 A.2d 1132 (1989); *Traveler's Indemnity Co. v. Lake*, Del.Supr., 594 A.2d 38 (1991). Furthermore, it is the duty of this Court to review common law rules to ensure that the conditions and policy objectives that justify the rules remain relevant and valid.[3] Relying on the case of *Saunders v. Hill*, Husband argues, conversely, that changes in well-settled public policy must be effected by the General Assembly. 202 A.2d at 810. This reliance is misplaced, however, because the case is factually distinguishable. In *Saunders* the General Assembly had enacted controlling legislation.[4] In the present case, there is no statute that directly applies to the Doctrine. Therefore, it is within the authority of this Court to abrogate the common law doctrine if it no longer merits recognition.

This Court refused to abrogate the Doctrine in *Alfree*, 410 A.2d at 162, despite the renunciation of the parental immunity doctrine in *Williams v. Williams*, Del.Supr., 369 A.2d 669 (1976). *Williams* held that the promotion of family harmony and the discouragement of collusive and fraudulent claims were unacceptable justifications for the parental immunity doctrine "in light of contemporary conditions and modern concepts of fairness." *Id.* at 671. The *Alfree* Court declined to abrogate the Doctrine because it was then perceived that the ef-

fects would be far-reaching and the problem was "more appropriate for legislative solution than for judicial determination." *Alfree*, 410 A.2d at 163 (citation omitted).

The *Alfree* Court's rationale for retaining the Doctrine included: 1) the preservation of family harmony and 2) the prevention of fraud and collusion. *Id.* at 162. These were the same rationales that were rejected with regard to parental immunity in *Williams*. It is inconceivable that suits between children and parents are less likely to disrupt family harmony than interspousal suits. This is also true with respect to property claims and actions for breach of contract, which are actionable in the family context.

 In our view, the Doctrine is more likely to have the effect of disrupting family harmony rather than preserving it. Denying a person compensation for injuries arising from the negligence of his or her spouse can be very disruptive (*e.g.*, large medical bills and loss of wages often result from serious accidents). Under the Doctrine, the married couple will have to pay these huge expenses, instead of relying on insurance proceeds. This added financial burden could well promote marital discord. *Hack v. Hack*, Pa.Supr., 495 Pa. 300, 433 A.2d 859, 866 (1981). Any destruction of family harmony that is prevented by the Doctrine is likely to be minimal due to the prevalence of liability insurance. In addition, the Doctrine may actually promote divorces because a person who suffers an injury at the hands of his or her spouse, but who has since divorced the spouse, may maintain a tort action against the former spouse. *Hudson v. Hudson*, Del.Super., 532 A.2d 620, 624, *appeal refused*, Del. Supr., 527 A.2d 281 (1987). Accordingly, it is conceivable that spouses may decide to divorce solely to bypass the restrictions of a Doctrine which putatively is designed to

---

**3.** *See Brooks v. Robinson*, Ind.Supr., 259 Ind. 16, 284 N.E.2d 794, 797 (1972) ("The strength and genius of the common law lies in its ability to adapt to the changing needs of the society it governs.").

**4.** Husband's reliance on *Wright v. Moffitt*, Del. Supr., 437 A.2d 554 (1981), and *Samson v. Smith*, Del.Supr., 560 A.2d 1024 (1989) is also misplaced. In those cases the Court refused to *create* a new cause of action. In the present case the Court is being asked to *remove* a judicially created limit on a cause of action.

preserve marital harmony. Such a result is repugnant to public policy.

Because of the prevalence of liability insurance, Husband argues that collusion and fraud will increase if spouses are able to sue each other. It is true that the adversarial system may be subject to tension because it is in the defendant spouse's interest for his or her injured spouse to receive some compensation, especially when the insurance company is the "real" party being sued. Such tension could potentially lead to a threat of corruption. Although the possibility of collusion exists in various situations such as intrafamily cases and suits between friends, the judicial system is adept at ferreting out frivolous and unfounded cases.[5] It is unnecessary and unwise to deny legitimate claims in order to prevent fraudulent and collusive suits because the judicial system contains numerous safeguards and deterrents against fraudulent claims such as perjury charges and modern discovery procedures.[6] *Luna v. Clayton*, Tenn.Supr., 655 S.W.2d 893, 896–97 (1983). *Cf., Daubert v. Merrell Dow Pharmaceuticals, Inc.*, —— U.S. ——, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) (holding that Federal Rule of Evidence 702 supersedes the "general acceptance" rule regarding scientific evidence, and that the adversarial process, including "vigorous cross-examination," provides safeguards against admission of "junk science" evidence).

The conclusion that the abrogation of the Doctrine will not lead to the destruction of family harmony or the proliferation of fraudulent suits is amply supported by empirical evidence.[7] Delaware is the only state in the nation which recognizes the doctrine solely on common law grounds.[8] Four other states also recognize the Doctrine,[9] but do so pursuant to a statute or a perceived statutory prohibition of judicial abrogation of the Doctrine.

In addition to arguing that the Doctrine should be abrogated because it is no longer a viable concept, Wife also argues that the Doctrine violates the Delaware Financial Responsibility Laws, 21 *Del.C.* Ch. 29 and 21 *Del.C.* § 2118 (hereinafter "§ 2118"). Section 2118, Delaware's no-fault statute,

---

**5.** The Supreme Court of West Virginia abrogated the Doctrine in 1978. The court explained: "[w]e do an injustice not only to the intelligence of jurors, but to the efficacy of the adversary system, when we express undue concern over the quantum of collusive or meritless law suits." *Coffindaffer v. Coffindaffer*, W.Va.Supr., 161 W.Va. 557, 244 S.E.2d 338, 343 (1978).

**6.** Dean William Prosser rejects the rationale behind the Doctrine:

Almost no legal writer has had any use for these arguments, and under repeated criticism and reiterated attacks on them in the courts, judicial perception of these arguments has slowly shifted. The danger of fraud has come to seem no greater than in many other cases where suit is allowed, such as the host-guest case or the suit between friends, and in any event it is now thought that the remedy for fraudulent claims is to expose the fraud rather than to discard all the honest claims along with the bad ones. Similarly, it has come to seem doubtful that peace and harmony of the home can be preserved or restored by refusing to redress a palpable wrong or to compensate a genuine injury, and there is no reason to believe that personal injury claims are more disruptive than property claims, which are actionable.

W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 122 (5th ed. 1984) (Law.'s ed.) (footnotes omitted). *See also* Restatement (Second) Torts, § 895F(1) (1979) ("A husband or wife is not immune from tort liability to the other solely by reason of that relationship.").

**7.** For example, the *amicus curiae* brief of the Delaware Trial Lawyers Association ("DTLA") provides data which suggest that abrogation of the doctrine has had no negative effects on insurance premiums, thus indicating that the number of fraudulent or collusive suits has not risen dramatically. DTLA Brief at exhibits A–D.

**8.** More than one dozen states have abrogated the Doctrine since *Alfree. See, e.g., Price v. Price*, Tex.Supr., 732 S.W.2d 316, 318 (1987) ("It is difficult to fathom how denying a forum for the redress of any wrong could be said to encourage domestic tranquility."); *Miller v. Fallon County*, Mont.Supr., 222 Mont. 214, 721 P.2d 342 (1986); *Shearer v. Shearer*, Ohio Supr., 18 Ohio St.3d 94, 18 OBR 129, 480 N.E.2d 388 (1985).

**9.** Prior to an opinion by the Florida Supreme Court dated May 27, 1993, five states other than Delaware recognized the Doctrine. *Waite v. Waite*, 618 So.2d 1360–61 (1993) ("[T]here no longer is a sufficient reason warranting a continued adherence to the doctrine of interspousal immunity.").

states that coverage on automobiles must be provided against all liability and injuries. Section 2118(f) further states that once a plaintiff recovers from the insurer, the insurer is subrogated to the plaintiff's right to sue the insured. Thus, recovery of insurance proceeds by the plaintiff is based on the plaintiff's right of action against the insured. Application of the Doctrine renders § 2118 unenforceable in full.

Construing the coverage provisions of the Delaware Financial Responsibility Laws, specifically 21 *Del.C.* § 2118 and 21 *Del.C.* § 2902, this Court has held that "neither statute restricts liability coverage to certain claims based upon the relationship of the plaintiff to the defendant. Rather, both provisions are drafted in broad language which provides for liability coverage for *all* claims up to the stated limits, regardless of the identity of the plaintiff." *State Farm Mut. Auto Ins. Co. v. Wagamon,* Del.Supr., 541 A.2d 557, 560 (1988) (emphasis supplied). This holding strongly supports a finding that the General Assembly intended to extend coverage to an injured spouse.[10]

We agree with the Supreme Court of Kansas and the vast majority of other jurisdictions which have found the Doctrine to be "a judicial anachronism that no longer merits recognition." *Flagg v. Loy,* Kan. Supr., 241 Kan. 216, 734 P.2d 1183, 1190 (1987). Accordingly, we hold that the Doctrine no longer meets the needs of society and must be abrogated.

## VI. EXTENT OF THE ABROGATION

We now focus our attention on the extent to which the Doctrine should be abrogated. *Amicus curiae* briefs advocating various theories were filed. This Court must, however, confine its ruling to the case presently before it. Our decision to abrogate the Doctrine applies to any injury which is negligently caused.[11] Accordingly, we overrule *Alfree* and abrogate the Doctrine.[12]

■ For the most part, interspousal lawsuits typically are initiated when the tortfeasor has sufficient insurance coverage to provide for the damages. From this fact, Wife argues that the Doctrine should be abrogated only to the extent that liability insurance coverage protects the negligent spouse. Under this theory, a negligent spouse is immune from tort liability for damages in excess of his or her liability insurance coverage. One reason for the limit is that it avoids the problem of one spouse executing on marital property to satisfy an excess judgment.

In the absence of a statute, the Court finds no reason to limit suits between married persons to insurance coverage while imposing no restrictions upon other suits. Also, making insurance coverage the limit on liability may have the practical effect of leaving the injured spouse far from compensated for his or her suffering. In the present case, the Husband was covered by substantial insurance, but in cases where the tortfeasor spouse has very little or no insurance, the injured spouse will be limit-

10. Although the *Wagamon* decision concerned a household exclusion in an insurance policy while the case at bar involves a common law doctrine, the important aspect of *Wagamon* is this Court's interpretation of the Financial Responsibility Laws.

11. The vast majority of jurisdictions that have abrogated the Doctrine have not limited it to automobile torts. Excluding Florida's recent abrogation of the Doctrine, thirty-eight out of forty-four states have not limited the abrogation to automobile torts. Wayne F. Foster, Annotation, *Modern Status of Interspousal Tort Immunity In Personal Injury and Wrongful Death Actions,* 92 A.L.R.3d 901 (1979). *See also Hack v. Hack,* Pa.Supr., 495 Pa. 300, 433 A.2d 859, 869 (1981).

12. The constitutionality of the Doctrine was accepted by this Court in *Alfree,* but was based principally on the case of *Paiewonsky v. Paiewonsky,* 446 F.2d 178 (3d Cir.1971), *cert. den.,* 405 U.S. 919, 92 S.Ct. 944, 30 L.Ed.2d 788 (1972). *Paiewonsky* held that the Doctrine did not discriminate "against women who marry" so as to violate their right to equal protection. *Id.* at 181–82. The holding was based on the finding that the Doctrine had a "reasonable relationship" to the goal of promoting domestic tranquility. *Id.* at 182. Because it is not necessary to the disposition of the case at bar, we withhold judgment as to the constitutionality of the Doctrine.

ed to recovering insufficient damage awards or no award at all. Having concluded that the Doctrine is no longer based on sound public policy grounds, this Court should not retain restrictions that would have the effect, at least in some instances, of preserving the Doctrine. In our view, it is not appropriate to deny or limit a right based upon the existence of insurance coverage.

In addition, although the present case involves the rule of interspousal immunity for negligence rather than an intentional tort, it is reasonable to conclude that there is "no logical or legal reason for drawing a distinction between the two." *Klein v. Klein*, Cal.Supr., 58 Cal.2d 692, 26 Cal. Rptr. 102, 103, 376 P.2d 70, 71 (1962). We realize that marital harmony is lacking where spouses intentionally harm one another. There is logic to the argument that, in cases where the parties have since divorced, there is little, if any, justification for barring an injured spouse from suing for intentional torts as well.[13] The case before us is a negligence case, however, and the intentional tort case is not before us. Nevertheless, it appears that the rationale underlying the abrogation of the Doctrine in the context of negligence actions would apply to intentional torts.[14]

As a separate issue, the parties requested permission to submit supplemental briefs addressing the question whether abrogation of the Doctrine would require a modification of the evidentiary rules, specifically Delaware Rule of Evidence ("D.R.E.") 411. D.R.E. 411 provides:

> Evidence that a person was or was not insured against liability is not admissible upon the issue whether he acted negligently or otherwise wrongfully. This rule does not require the exclusion of evidence of insurance against liability

when offered for another purpose, such as proof of agency, ownership or control, or bias or prejudice of a witness.

Husband's argument that some modification to customary trial practice should be made in suits between spouses fails because it is based solely on the assumption of a high risk of collusion between spouses. D.R.E. 411 specifically provides that the rule does not require the evidence of insurance against liability be excluded when offered to show bias or prejudice of a witness. Thus, collusion issues are contemplated by the rule in its current form.

As previously stated, the risk of collusion is not unique to interspousal litigation. In addition, empirical evidence shows that fears of rapidly increasing collusive suits due to the abrogation of the Doctrine are unfounded. None of the states which have abrogated the Doctrine have reinstated it. *Shearer v. Shearer*, Oh.Supr., 18 Ohio St.3d 94, 97, 18 OBR 129, 131, 480 N.E.2d 388, 393 (1985).

## VII. CONCLUSION

We find that the Doctrine is a relic from the common law that is no longer a viable concept and no longer meets the needs of modern society. The overwhelming majority of states in this nation have already abrogated the Doctrine without negative repercussions. Accordingly, we overrule *Alfree* and reject the Doctrine as a defense in this case.

---

**13.** The *amicus curiae* brief of the Section on Women and the Law of the Delaware State Bar Association ("DSBA") argues that abrogation of the Doctrine with respect to intentional torts is necessary because neither Delaware divorce law nor Delaware criminal law provide adequate remedies for intentional torts committed against spouses. Assuming the existing law is inadequate, it does not necessarily follow that abrogation of the Doctrine is the sole answer.

Other methods of reform include a modification of existing criminal or divorce law through legislative initiative.

**14.** The General Assembly may wish to consider a specific statutory enactment which would clearly set the public policy of this State in all aspects of interspousal causes of action sounding in tort.