SEARS, ROEBUCK & CO., a New York Corporation, and Otis Elevator Co., a New Jersey Corporation, jointly and severally, Defendants Below, Appellants,

v.

Hsu–Nan HUANG, Guardian ad Litem for Stephanie Huang, a minor, Plaintiff Below, Appellee.

Nos. 83, 1994, 89, 1994.

Supreme Court of Delaware.

Submitted: Dec. 15, 1994.

Decided: Jan. 26, 1995.

Stephen F. Dryden of Heckler & Cattie, Wilmington, for appellant Sears, Roebuck & Co.

James W. Semple of Morris, James, Hitchens & Williams, Wilmington, for appellant Otis Elevator Co.

Bernard A. Van Ogtrop (argued), and R. Karl Hill of Cooch & Taylor, Wilmington, for appellee.

Before VEASEY, C.J., WALSH, HOLLAND, HARTNETT and BERGER, JJ. (constituting the Court en Banc).

HOLLAND, Justice:

This is an interlocutory appeal from the Superior Court. The plaintiff-appellee, Hsu–Nan Huang, guardian *ad litem* for Stephanie Huang ("Huang"), a minor, seeks damages from the defendants-appellants, Sears, Roebuck & Co. ("Sears") and Otis Elevator Co. ("Otis"). Huang's suit is based on the alleged negligence of Sears and Otis, with regard to an incident in which Huang's hand became caught in an escalator.

This appeal arises from the Superior Court's ruling, which granted Huang's motion *in limine*, to preclude reference at trial to the alleged negligent conduct of Huang's mother. The Superior Court certified that ruling to this Court for two reasons: first, it concluded that this Court's recent decision in *Beattie v. Beattie*, Del.Supr., 630 A.2d 1096 (1993), placed the continued viability of Delaware's limited parental immunity doctrine in question; and second, it recognized that its pre-trial ruling may be deemed to conflict with this Court's decision in *McKeon v. Goldstein*, Del.Supr., 53 Del. 24, 164 A.2d 260 (1960). This Court accepted the interlocutory appeal. Supr.Ct. R. 42.

The defendants, Sears and Otis, have raised two arguments. First, according to the defendants, the parental immunity doctrine should now be abrogated entirely for reasons similar to those that recently persuaded this Court to abrogate completely the interspousal immunity doctrine. *See Beattie v. Beattie*, 630 A.2d 1096. Second, the defendants argue alternatively that the Superior Court erred, as a matter of law, in ruling that Delaware's limited parental immunity doctrine precludes the presentation of evidence or argument regarding its allegation of negligent supervision by Huang's mother as a supervening cause of Huang's injury. *See McKeon v. Goldstein*, 164 A.2d 260.

This Court has decided to retain the current Delaware law which recognizes a limited parental immunity doctrine. *Schneider v. Coe*, Del.Supr., 405 A.2d 682 (1979)

("*Schneider I*"). This Court has also decided to adhere to its prior holding in *McKeon* that evidence of a parent's negligent supervision may be presented to establish that such negligence was a supervening cause of a minor child's personal injury. *McKeon v. Goldstein*, 164 A.2d at 262–63. Because we find the Superior Court's ruling is inconsistent with *McKeon*, the interlocutory judgment of the Superior Court must be reversed.

### Substantive Facts

On October 5, 1991, Huang, then four years old, along with her younger brother, accompanied their mother, Cheung–Hua Mei (hereinafter "Mother"), while she shopped in the Sears retail outlet at Price's Corner. After hearing an announcement on the store's public address system, the Mother and her children took the ascending escalator from the first floor to the second floor to see a presentation on jewelry. The presentation took place on the second floor within a few feet of the escalator.

The jewelry presentation was given before more than twenty people by Valerie Carroll [1] ("Carroll") on behalf of her employer, Classic Contemporary Designs. During the presentation, Huang's brother was in a stroller. Huang stood next to her Mother. The Huang family was somewhere in the middle of the crowd.

The Mother stood watching the jewelry presentation approximately six feet from the escalator. At times, Huang either held her Mother's hand or held the stroller next to her Mother. Carroll stated that as she:

> got into the beginning of the demonstration, about 5 minutes into it, the little girl went towards the escalator. The very first time she did that I stopped and asked the mother to get the child; that was the only time I asked her.

According to Carroll, Huang went to the escalator and had to be brought back by her Mother more than two or three times.

At the conclusion of the presentation, Carroll was handing out free pendants to those in attendance when she heard Huang scream. Carroll rushed over and stopped the escalator. She then called for a security guard who came and removed Huang's hand and arm from the nippoint between the escalator handguard and handrail.

The Mother does not remember her daughter walking away from her and toward the escalator several times during the fifteen minute jewelry presentation. The Mother recalls Huang standing next to her, holding the stroller, as she approached Carroll to accept a pendant. As she went around the display table to receive the gift, she heard Huang's scream. The Mother believes the time lapse was approximately thirty seconds between the time when she last remembered Huang holding onto the stroller and when she heard Huang's scream.

### Procedural Facts

Huang sued Sears and Otis for damages relating to her injury from the escalator. Huang filed a complaint in the Superior Court on February 16, 1993, against Sears. On April 8, 1993, Huang was granted leave to amend the complaint to add Otis as a party defendant.

The amended complaint alleges negligence in the construction, maintenance, and operation of the Otis manufactured escalator system in place in the Sears retail location in Price's Corner. This negligence allegedly resulted in the injury to Huang. The complaint, as amended, states that the:

> [m]inor plaintiff was at all times reasonably supervised by her mother who kept a proper lookout for minor plaintiff's safety.

Sears and Otis seek to assert the defense of supervening cause based on the Mother's negligent supervision of her child, Huang. On April 8, 1993, Sears filed its answer to Huang's amended complaint, alleging as part of its Fifth Affirmative Defense that:

---

1. Ms. Carroll was employed by Classic Contemporary Designs as of October 1991. She had been working as a subcontractor at the Sears Price's Corner store performing jewelry demonstrations for three years. Sears earned a twenty or twenty-five percent commission on her total sales.

if the plaintiff was damaged in any manner whatsoever, that said damage was a direct and proximate result of the intervening and superseding actions on the part of other persons and not of this defendant, and that such intervening and superseding action on the part of the other person or persons bars recovery herein on behalf of the plaintiff due to the doctrine of intervening, superseding causation.

Sears and Otis have not asserted third party claims for contribution. They seek to introduce evidence regarding the Mother's conduct in order to show that her negligence, not theirs, was the sole (supervening) proximate cause of Huang's injury. The Superior Court ruled that no reference or argument could be made at trial to the negligence of Huang's mother. This decision was based on the doctrine of parental immunity which bars children from suing their parents, and third parties from suing parents for contribution, in cases in which an unemancipated child is negligently injured.

### History in Delaware

### Parental Immunity Doctrine

The doctrine of parental immunity was first recognized in Delaware by the Superior Court in the case of *Strahorn v. Sears, Roebuck & Co.*, Del.Super., 50 Del. 50, 123 A.2d 107 (1956). The facts of *Strahorn* are similar to the facts in the case *sub judice*. A little boy evaded his father's grasp, ran to an escalator, fell, and injured his fingers in the escalator apparatus. In *Strahorn*, the Superior Court noted, "the majority rule is that an unemancipated minor cannot sue a parent in tort in a case of ordinary negligence." *Id.* 123 A.2d at 108 (citations omitted). The Superior Court adopted the majority rule, relying in part on the public policy of "preserv[ing] the peace and harmony of the home." *Id.* Accordingly, the Superior Court held the action was barred by the doctrine of parental immunity, notwithstanding the fact that the action was for contribution from the minor child's parent, as opposed to a direct action against the parents for damages by the minor child. *Id.* 123 A.2d at 109–10.

This Court first addressed the doctrine of parental immunity in the case of *Williams v. Williams*, Del.Supr., 369 A.2d 669 (1976). In *Williams*, a father, as next friend of the child, brought a direct action against the minor child's mother for injuries the child sustained in an automobile accident. This Court held that "an absolute rule of parental immunity in tort has no rational basis under modern day conditions and circumstances" and allowed the minor's suit to stand. *Id.* at 673.

This Court did not completely abrogate the doctrine of parental immunity in *Williams* and was careful to point out that *Strahorn* had not been overruled. The holding in *Williams* was limited. It only permitted an unemancipated minor child to sue an insured parent for negligence arising from an automobile accident. In *Williams*, we stated, "[w]hether this Court will adopt the doctrine of parental immunity when ... issues of parental authority and discretion are presented must await another case." *Id.*

Three years later, in *Schneider v. Coe*, Del.Supr., 405 A.2d 682 (1979) ("*Schneider I*"), this Court decided the question that *Williams* left unresolved.[2] In *Schneider I*, a minor child ventured into a neighbor's yard and was kicked by a pony. The issue presented was whether a "parent who negligently supervises his unemancipated child can be liable for the resulting injury to his child." *Id.* at 682. This Court ruled that evidence regarding the parent's negligence was inadmissible. *Williams* was distinguished because "[u]nlike driving an automobile, supervision of one's children involves issues of parental control, authority, and discretion that are uniquely matters of a very personal type of judgment." *Id.* at 684.

Reciprocal rights and duties inhere in the parent-child relationship. Anything creating conflict between parent and child, or interfering with the authority, discretion, or control that a parent has the right to exercise in supervising his child is repugnant to the institution of the family, and therefore is against public policy. Paren-

**2.** After quoting the same passage from *Williams* as quoted in the preceding paragraph, the Court stated, "[t]he instant appeal seems to be that other case." *Id.* at 683.

tal immunity will not be abrogated where the duty arises from the family relationship, for to do so would manifestly tend to disturb domestic tranquility.

*Id.*

In *Schneider I,* this Court explicitly declined to extend the holding in *Williams* to abrogate entirely the doctrine of parental immunity. After recognizing the exception to the parental immunity doctrine in *Williams,* this Court held that "where parental control, authority, or discretion is involved, the rule of parental immunity must be preserved." *Id.* (*citing* Allan E. Korpela, Annotation, *Liability of a Parent for Injury to Unemancipated Child Caused by Parent's Negligence,* 41 A.L.R.3d 904, 976–80 (1972)).

### Limited Parental Immunity

### Delaware Retains Doctrine

Otis and Sears contend that this Court should no longer retain the doctrine of parental immunity.[3] That argument is based, by analogy, on this Court's recent decision to abrogate the doctrine of interspousal tort immunity. *Beattie v. Beattie,* Del.Supr., 630 A.2d 1096 (1993). While the national trend has been toward eroding the doctrine of parental immunity, only ten states have completely abrogated the doctrine for all torts. Caroline E. Johnson, Comment, *A Cry for Help: An Argument for Abrogation of the Parent–Child Tort Immunity Doctrine in Child Abuse Cases,* 21 Fla.St.U.L.Rev. 617, 638 (1993).

The majority of states, thirty-three, have not abrogated the parental immunity doctrine altogether, but have only recognized certain exceptions and still provide partial immunity. *Id.* at 630 n. 88. Twenty-nine states, for example, have abandoned the doctrine in the instance of automobile accidents, such as in the *Williams* decision. *Id.* at 632 n. 100. Twenty-six states have abrogated

the doctrine for negligent torts. *Id.* at 631. Many states, however, have not abrogated the doctrine or have reserved judgment when the facts before them involve parental discretion, control and authority. We have decided to adhere to all of our prior precedents with regard to the issue of parental immunity. *See Williams v. Williams,* 369 A.2d 669; *Schneider I,* 405 A.2d 682. Therefore, "where parental control, authority, or discretion is involved, the rule of parental immunity [is] preserved" in Delaware. *Schneider I,* 405 A.2d at 684.

### If Parent's Negligence Relevant

### Admissible As Supervening Cause

Otis and Sears' second argument is that, even if the Mother is immune from direct liability or liability for contribution, they should be allowed to present evidence to establish that the Mother's negligent supervision (control) was a supervening cause of her minor child's injuries. This Court responded affirmatively to a similar argument in *McKeon v. Goldstein,* Del.Supr., 53 Del. 24, 164 A.2d 260 (1960). In *McKeon,* this Court stated that "the determination of proximate cause is a question of fact for the trier of facts." *Id.* 164 A.2d at 263.

Thus, in *McKeon,* we held that even when the parent was not (and could not be) a named defendant, the trier of fact must decide whether the parent's negligent supervision was the sole proximate cause, i.e., supervening cause, of her minor child's injury. If the parent's negligence was a supervening cause of the child's injury, the named defendants' negligence would be a remote cause, rather than a proximate cause, and the defendants would not be liable as tortfeasors.[4] We adhere to that holding in this case.

Huang contends that the holding in *McKeon* was modified in 1980, when the

---

3. *See Coe v. Schneider,* Del.Supr., 424 A.2d 1 (1980) ("*Schneider II*"); *Schneider I,* 405 A.2d 682; *Williams v. Williams,* Del.Supr., 369 A.2d 669 (1976); *Strahorn v. Sears, Roebuck & Co.,* Del.Supr., 50 Del. 50, 123 A.2d 107 (1956).

4. In *McKeon,* this Court allowed a jury to hear evidence of parental conduct for the issue of

proximate causation. The case involved a mother who left her child on a bed adjacent to a hot steam pipe from the heating system. The mother placed the child on her bed after noticing a bulge in the ceiling over the child's crib which appeared to be from a water leak. The child was subsequently discovered severely burned lying on the floor near the pipe.

*Schneider* litigation came before this Court a second time in *Coe v. Schneider,* Del.Supr., 424 A.2d 1 (1980) (*"Schneider II"*). The question presented in *Schneider II* was whether evidence of the parent's negligent supervision of a child was admissible in a suit based on the "attractive nuisance" doctrine. This Court held that any reference to the parent's negligent conduct was inadmissible, even with regard to the issue of proximate cause.

In *Schneider II,* this Court held that "[g]iven Delaware's adherence to the rule of Restatement [of Torts] (2d) § 339,[5] under the facts of this case, parental supervision is immaterial to the question of the defendants' liability." *Id.* at 2. *See Cox v. Delaware Elec. Coop., Inc.,* D.Del., 823 F.Supp. 241, 247–48 (1993) (holding that under facts of case, evidence of employer's negligence was irrelevant and, therefore, inadmissible to demonstrate intervening/superseding causation). "Notably, § 339 and the official comments thereto do not make the possessor's liability contingent upon a showing that the child's trespass was not due to parental negligence in failing to properly supervise the child." *Schneider II,* 424 A.2d at 2. Thus, our holding in *Schneider II,* regarding the immateriality of the parent's negligent control, was explicitly based on the attractive nuisance doctrine theory of liability.

■ Our holding in *McKeon* was not cited in *Schneider II* because the issue of parental control was irrelevant. *McKeon* has not been overruled but has, in fact, been cited with approval in other contexts. *Moffitt v. Carroll,* Del.Supr., 640 A.2d 169 (1994); *Culver v. Bennett,* Del.Supr., 588 A.2d 1094 (1991); *Naidu v. Laird,* Del.Supr., 539 A.2d 1064 (1988); *Chudnofsky v. Edwards,* Del. Supr., 58 Del. 280, 208 A.2d 516 (1965); *Sweetman v. Strescon Indus., Inc.,* Del.Super., 389 A.2d 1319 (1978). Delaware's recognition of a limited parental immunity doctrine in *Schneider I* is completely consistent with the recognition that, when parental negligence is relevant but not actionable, a defendant may introduce evidence to establish that parental negligence was the *supervening* cause of a minor child's injury. *See McKeon v. Goldstein,* 164 A.2d at 262–63. *Cf. Schneider II,* 424 A.2d 1.

### This Case

### Delaware Jurisprudence

### Limited Parental Immunity

■ This Court has held that Delaware's enactment of a comparative negligence statute did not change the common law doctrine of proximate cause. *Culver v. Bennett,* 588 A.2d at 1098. Multiple defendants may be liable as joint tortfeasors if each defendant's negligence is found to be a proximate cause of a plaintiff's injury. *Id.* If one defendant's negligence is found to be the *sole* proximate cause of the plaintiff's injury, it is a supervening cause which shields the other defendants from liability. *McKeon v. Goldstein,* 164 A.2d at 263.

■ In cases where the parental immunity doctrine applies, defendants who decide to assert the parent's negligence as a supervening cause adopt essentially an "all or nothing" legal strategy. The trier of fact may decide that the parent's negligence and the negligence of one or more defendants were *all* proximate causes of the child's injury. In such an event, since the parent is immune

---

5. Section 339 provides:
   Artificial Conditions Highly Dangerous to Trespassing Children
   A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if
     (a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and
     (b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and
     (c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and
     (d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and
     (e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.

from direct liability or liability for contribution, by definition the parent cannot be a joint tortfeasor. 10 *Del.C.* §§ 6301 and 6302. *See Medical Ctr. of Del., Inc. v. Mullins,* Del.Supr., 637 A.2d 6 (1994).[6] Therefore, the non-parent tortfeasors will be held jointly and severally liable for the entire amount of the minor child's damages.

Because this case is in the pre-trial stage and will be remanded for further proceedings, we will summarize our holdings *seriatim.* First, where parental control, authority, or discretion is involved, *e.g.,* in potential actions against parents for negligent supervision of their children, the rule of parental immunity is preserved in Delaware and precludes direct claims by a minor child, as well as third-party claims for contribution. *Accord Schneider I,* 405 A.2d 682; *Strahorn v. Sears, Roebuck & Co.,* Del.Super., 50 Del. 50, 123 A.2d 107 (1956). *Cf. Williams v. Williams,* Del.Supr., 369 A.2d 669 (1976). Second, if the parent's negligence is relevant[7] to the minor child's theory of liability, but not actionable,[8] a defendant may introduce evidence to establish that the parent's negligence was a *supervening* cause of the minor child's injury. *McKeon v. Goldstein,* 164 A.2d 260. Third, if the parent's negligence was a proximate cause but not a supervening cause, the parent's negligence does not provide a basis for reducing full payment to the minor child or the basis for a claim of contribution by any defendant determined to be a tortfeasor, since by definition the parent cannot be a joint tortfeasor. *See Medical Ctr. of Del., Inc. v. Mullins,* 637 A.2d 6; *Schneider I,* 405 A.2d 682.[9]

### Conclusion

The interlocutory judgment of the Superior Court, which granted the plaintiff's motion *in limine,* is reversed. This matter is remanded for further proceedings in accordance with this opinion.

---

6. "The Joint Tortfeasor Contribution Statute comes into play only when the proposed contributor shares with the defendant a 'common liability' to the plaintiff. Absent such liability, no contribution may be enforced." *Fields v. Synthetic Ropes, Inc.,* Del.Supr., 59 Del. 135, 215 A.2d 427, 430 (1965).

7. *See Schneider II,* 424 A.2d 1.

8. *See Schneider I,* 405 A.2d 682.

9. The parent's negligence cannot be imputed to the minor child. *McKeon v. Goldstein,* 164 A.2d at 262. This Court recently addressed the minor child's own capacity for contributory negligence. *See Moffitt v. Carroll,* Del.Supr., 640 A.2d 169 (1994).