Susan C. SHEA, Individually and as Executrix of the Estate of Christopher M. Shea and as Parent and Next Friend of Christopher L. Shea, a minor, Plaintiff Below, Appellants,

v.

Kathryn H. MATASSA, XL Group Ltd., a Delaware corporation, Christopher John Bisaha and John Doe, Defendant Below, Appellee.

No. 211, 2006.

Supreme Court of Delaware.

Submitted: Nov. 29, 2006.
Decided: Feb. 1, 2007.

12. *Id.*

13. *Id.* (footnote omitted).

Richard A. DiLiberto, Jr. (argued) and Jennifer M. Kinkus, Wilmington, Delaware for appellants.

Jeffrey A. Young, (argued) Young & Young, Dover, Delaware for appellees XL Group, Ltd., Christopher John Bisaha and John Doe.

C. Scott Reese (argued) and Noriss E. Cosgrove, Cooch & Taylor, P.A., Wilmington, Delaware for appellee Kathryn H. Matassa.

John S. Spadaro, Murphy, Spadaro & Landon, Wilmington, Delaware; William M. Erhart, Wilmington, Delaware for amicus curiae Delaware Trial Lawyers Association.

William M. Kelleher, Ballard Spahr Andres & Ingersoll, LLP, Wilmington, Delaware for amicus curiae Mothers Against Drunk Driving.

James J. Haley, Jr., Wilmington, Delaware for amicus curiae Defense Counsel of Delaware.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS, and RIDGELY, Justices, constituting the court en banc.

STEELE, Chief Justice.

This litigation arises from a fatal car accident involving Philip Healy and Delaware State Police Corporal Christopher M. Shea. Before the accident, Healy had consumed alcohol at the home of defendant-appellee, Kathryn Matassa and later at Arena's Bar and Deli.[1] At the time of the accident, Healy had a .336 blood alcohol concentration. Both Healy and Corporal

---

1. The defendant-appellees associated with Arena's Bar and Deli are XL Group, Ltd., John Bisaha, and John Doe who we will collectively refer to as "Tavern defendant-appellees."

Shea died at the scene. Susan Shea, Individually and as Executrix of the Estate of Christopher M. Shea and as Parent and Next Friend of Christopher M. Shea, Jr. and Elizabeth L. Shea, brought this suit against the Tavern defendant-appellees and Matassa in Superior Court. The complaint alleged that the defendants negligently caused Corporal Shea's death. The trial judge granted the Tavern defendant-appellees motion for judgment on the pleadings and Mattassa's motion for summary judgment. Shea appealed.

Shea argues that this Court should create a common law cause of action for dram shop liability and hold the Tavern defendant-appellees responsible for Corporal Shea's death because they negligently served Healy alcohol knowing that he would then drive while intoxicated. Further, Shea alleges that Matassa should be liable for Corporal Shea's death under social host liability theory because she negligently served Healy alcohol at her home, thus violating her duty to prevent him from leaving and then driving while intoxicated. Shea contends that this Court has never rejected a social host liability theory, so such a ruling would not require overturning any precedent.

We conclude that the General Assembly, not this Court, should decide whether to create a cause of action for dram shop liability or social host liability. The General Assembly heavily regulates the sale and use of alcohol and by so doing has clearly announced its intent to occupy exclusively the field of policy making in that subject area. Furthermore, the parties raise controversial and competing public policy questions which the General Assembly can more effectively debate, consider and re-

solve through the legislative process. Accordingly, we affirm the judgment of the Superior Court.

## FACTS AND PROCEDURAL HISTORY

On July 17, 2004, Philip Healy attended a funeral followed by a reception at Harry's Savoy Grill in Wilmington, Delaware. Afterwards, Healy drove to the home of his sister, defendant-appellee Kathryn Matassa, in Pot–Nets Seaside, Longneck, Delaware to attend a family gathering at approximately 4:00 p.m. During the family gathering, various types of food and alcoholic and nonalcoholic beverages were available for guests. Healy consumed alcohol at Matassa's home.[2] Healy left Matassa's home at approximately 10:30 p.m. and later went to Arena's Bar & Deli, a tavern in Rehoboth Beach, Delaware, where he consumed more alcohol.[3] At approximately 1:15 a.m. on July, 18, 2004, Healy left Arena's and drove northbound on Delaware Route 1. At the intersection of Routes 1 and 16 he crashed into another car, damaging his headlights and injuring the passenger of that car. Healy continued driving and crossed the median driving north in the southbound lanes of Route 1 for approximately nine miles. At approximately 2:05 a.m., Healy collided head on with on duty Delaware State Police Corporal Christopher M. Shea. Corporal Shea survived for 49 minutes and died at 2:54 a.m. Healy died at the scene. Healy's blood alcohol concentration was .336. Corporal Shea's wife Susan C. Shea and minor children, Christopher M. Shea, Jr. and Elizabeth L. Shea survive him.

Shea filed the complaint in Superior Court on July 20, 2005 against Matassa and the Tavern defendant-appellees seek-

---

**2.** According to Matassa, beer and wine were available for her adult guests and she did not monitor them; they served themselves. Shea contends, however, that Matassa served Healy and other guests alcoholic beverages.

**3.** According to Shea, John Bisaha and/or John Doe served Mr. Healy alcoholic beverages at Arena's.

ing damages for Corporal Shea's death. In the complaint, Shea alleged that the defendants were negligent and/or grossly negligent in serving alcoholic beverages to Healy, who drove his car under the influence, thereby causing the car accident in which Corporal Shea died.

Tavern defendant-appellees filed a motion for judgment on the pleadings on October 11, 2005, and the trial judge issued an order granting the motion on January 10, 2006. Shea appealed to this Court on February 1, 2006, which this Court dismissed on the grounds that the appeal was interlocutory. Matassa moved for summary judgment on January 10, 2006, and on March 31, 2006, the trial judge issued an order granting the motion. On April 26, 2006, Shea filed a Notice of Appeal in this Court seeking reversal of the trial judge's decisions granting the Tavern defendant-appellees' motion for judgment on the pleadings and Matassa's summary judgment motion. On July 28, 2006, Tavern defendant-appellees moved to affirm the trial judge's decision granting the motion for judgment on the pleadings, and Matassa moved to affirm the trial judge's decision granting summary judgment. This Court denied those motions on August 9, 2006.[4]

## DISCUSSION

■ "We review a trial judge's grant of summary judgment *de novo*. We will affirm a trial judge's grant of summary judgment when, viewing the facts and inferences in the light most favorable to the nonmoving party, if there are no issues of material fact in dispute and the moving party is entitled to judgment as a matter of law."[5] Furthermore, we are reviewing two questions of law regarding dram shop liability and social host liability which are subject to *de novo* review.[6]

### 1. Dram Shop Liability

■ Shea contends that this Court should establish a common law Dram Shop cause of action, resulting in the tavern defendant-appellees being held liable for Corporal Shea's death because the tavern's employees served Healy alcohol in the tavern knowing that Healy would drive away while intoxicated. To support this argument, Shea cites cases from several jurisdictions that recognize a common law dram shop cause of action.[7] Shea contends that because the General Assembly has never enacted a dram shop law despite the opportunity to do so, this Court should therefore create a common law limited dram shop cause of action to fill the resulting legislative vacuum.

This Court, in an unbroken line of cases over the past twenty-five years, has determined that the establishment of a Dram Shop cause of action presents a social policy issue for the legislature, not the Court.[8]

---

4. Defense Counsel of Delaware, Delaware Trial Lawyers Association, and Mothers Against Drunk Driving filed *amicus curiae* briefs in this appeal.

5. *Windom v. Ungerer,* 903 A.2d 276 (Del. 2006).

6. *See Beattie v. Beattie,* 630 A.2d 1096, 1098 (Del.1993); *Fiduciary Trust Co. v. Fiduciary Trust Co.,* 445 A.2d 927, 930 (Del.1982); *Duvall v. Charles Connell Roofing,* 564 A.2d 1132 (Del.1989).

7. Shea cites the following cases in support her argument: *Jackson v. Cadillac Cowboy, Inc.,* 337 Ark. 24, 986 S.W.2d 410 (Ark.1999) (common law dram shop liability); *Hickingbotham v. Burke,* 140 N.H. 28, 662 A.2d 297 (1995) (social host liability where an underage person was served); *Hart v. Ivey,* 332 N.C. 299, 420 S.E.2d 174 (1992) (social host liability where an underage person was served at a party); *Brigance v. Velvet Dove Restaurant, Inc.,* 725 P.2d 300 (Okla.1986) (common law dram shop liability).

8. *McCall v. Villa Pizza, Inc.,* 636 A.2d 912, 913 (Del.1994); *Acker v. S.W. Cantinas, Inc.,*

"The essential rationale underlying this line of cases is that the determination of whether to impose liability on tavern owners for injuries caused by intoxicated patrons involves significant public policy considerations and is best left to the General Assembly." [9] As this Court has held:

The liability of commercial vendors of alcohol has been traditionally treated through judicial deference to legislative action or inaction. Since state regulation of the commercial dispensing of alcohol is the norm, the lack of statutorily-imposed liability through 'Dram Shop Acts' or comparable legislation mitigates against the creation of such a cause of action on common law grounds. Delaware has no 'Dram Shop Act' and, as this Court noted in *Wright*, the desirability of such a measure is a matter for the General Assembly. [10]

This Court also noted that "[t]he General Assembly is in a far better position that this Court to gather the empirical data and to make the fact finding necessary to determine what the public policy should be as to Dram Shop law, and the scope of any such law." [11] In *Wright*, we also noted that the scope issue has many practical implications; for example:

should any such liability extend to hotel dining room, or restaurant owner (or to social host) as well as to a 'tavern' owner? should it extend to assaults or other torts by an inebriated patron? to whom should such an action accrue? Should there be a special rule for minors? And, inevitably, if a cause of action were recognized under any of these circumstances, a commercial dispenser of alcoholic beverages (and, probably, a social host) would be a party to every suit in which an intoxicated person is alleged to have committed a tortious act. [12]

"[H]istorically, our Courts have recognized that the General Assembly has the power and responsibility to license and regulate the use and sale of alcoholic beverages for the benefit of the public." [13] The General Assembly has traditionally governed the alcoholic beverage business, [14] and the various new statutes (or recent amendments) suggest that the legislature decided to try different ways to reduce alcohol related vehicle accidents as an alternative to enacting a dram shop law. In 2003, in the 142nd General Assembly, Senator Peterson and Representative Keeley sponsored Senate Bill No. 51 to create dram shop liability under limited circumstances; however, that bill failed to gain support in the General Assembly and was not enacted. [15]

Instead of passing bills relating to dram shop liability, the General Assembly enacted statutes regulating the use and sale of alcohol in Delaware in recent years. For example, in 2004, the legislature reduced

586 A.2d 1178, 1180 (Del.1991); *Oakes v. Megaw*, 565 A.2d 914, 916 (Del.1989); *Samson v. Smith*, 560 A.2d 1024, 1027 (Del.1989); *Wright v. Moffitt*, 437 A.2d 554, 556 (Del. 1981).

9. *McCall*, 636 A.2d at 913.

10. *DiOssi*, 548 A.2d at 1364. *See also Wright v. Moffitt*, 437 A.2d 554 (Del.1981).

11. *Wright*, 437 A.2d at 555.

12. *Id.*

13. *Id.*

14. *Id.* at 554.

15. Senate Bill No. 51, 142nd General Assembly (2003). The bill, in pertinent part, stated:

Dram Shop; Seller liability for damages by intoxicated person. If any person or holder of a license, individually, or through an agent, intentionally or recklessly sells any alcoholic liquor to an intoxicated person, and such purchaser, in consequence of such intoxication, thereafter injures the person or property of another, such seller is liable for damages to the person injured.

the blood alcohol legal limit while driving, operating or controlling a motor vehicle to 0.08.[16] Under *4 Del. C.* § 1206(c), a server of alcohol who is found serving an intoxicated patron alcohol can have his server training card revoked.[17] In 2005, House Bill No. 176 created a certification and renewal training program for alcoholic beverage servers and provided for the implementation and enforcement of the legislation.[18] The General Assembly also amended 4 *Del. C.* § 1201, tightening the State's control over serving alcohol.[19] In 2006, the 143rd General Assembly passed Senate Bill No. 376, which mandates an ignition interlock for offenders with a blood alcohol content of .15 or above or for those who refuse a chemical test.[20] The 143rd General Assembly also passed Senate Bill No. 270, amending provisions in titles 11 and 21 that make it unlawful to drive under the influence of alcohol or drugs.[21] These recent enactments indicate that the General Assembly is fully aware of the social issues derived from, and has taken measures it deemed effective to regulate, alcohol consumption.

Shea relies upon *Beattie v. Beattie*, where this Court overturned precedent and abrogated the common law doctrine of interspousal immunity.[22] This Court noted that "it is well settled law that the judiciary has the power to overturn *judicially-created doctrine*, so long as that doctrine has not been codified in statute."[23] *Beattie*, however, has no application here because, the Delaware judiciary has never created a doctrine approving or rejecting the theory of dram shop liability, whereas in *Beattie*, there was judicially created common law recognizing the interspousal immunity doctrine but no evidence that the General Assembly had expressed any intent to legislate with respect to that common law doctrine.[24] Furthermore, in *Beattie*, the appellant asked this Court to *remove* a judicially created limit on a cause of action; whereas here, Shea is asking this Court to *create* a new cause of action.[25] Because the judiciary did not create the dram shop liability doctrine and because the General Assembly has actively and expansively regulated the use and sale of alcohol, we decline to create a new cause of action. We defer, as we should, to the General Assembly, which is uniquely situated to effectively examine the empirical

**16.** 21 *Del. C.* § 4177

**17.** 4 *Del. C.* § 1206(c) The Commissioner may suspend or revoke the server training card of any person who the Commission determines, after a hearing, has violated this title or the Commissioner's rules. If a person's card is suspended or revoked, that person shall not be permitted to serve alcohol in Delaware during the period of suspension or, if revoked, for such period of time as stated by the Commissioner in the order of revocation. In addition, the Commissioner may require that a person that has completed the course attend and successfully complete either the full course or the recertification course.

**18.** House Bill No. 176, 143rd General Assembly (2005).

**19.** *See* 4 *Del. C.* § 1201 (*Also see generally* Chapter 12. Delaware Responsible Alcoholic Beverage Server Training Program).

**20.** Senate Bill No. 376, 143rd General Assembly (2006).

**21.** Senate Bill No. 270, 143rd General Assembly (2006).

**22.** 630 A.2d 1096, 1098 (Del.1993). Interspousal immunity prevented one spouse from suing the other in tort. This Court held that the doctrine of spousal immunity was no longer a viable concept and no longer met the needs of our society.

**23.** *Id.* at 1098 (emphasis added).

**24.** *Id.* at 1099.

**25.** *See Id.* at 1096 n. 4.

data, hold public hearings, debate the social and economic issues implicated, and then decide whether Delaware should recognize dram shop liability. Accordingly we affirm the judgment of the Superior Court on that issue.

### 2. Social Host Liability

■ Shea also claims that Matassa served alcoholic beverages to Healy knowing that he was under the influence of alcohol and that he would shortly thereafter drive a car. Shea contends that Matassa, a social host, had a duty to prevent Healy from driving while intoxicated and, therefore, Matassa should be liable for Healy causing Corporal Shea's death. Relying on DiOssi v. Maroney,[26] Shea argues that because this Court has never rejected a social host liability theory, recognizing social host liability on these facts would not require overturning any precedent.

The central issue is whether this Court should create a common law cause of action for social host liability. "Social host liability presents a mixed question of law and public policy: should a third party injured by the tortious conduct of a person who became intoxicated as the result of alcohol improperly dispensed by a social host have a cause of action against the dispenser?"[27] DiOssi v. Maroney is this Court's most recent case discussing social host liability.

In DiOssi, this Court held that Maroney, a social host of a private party, was liable for plaintiff DiOssi's injuries under a premises liability theory. Maroney employed DiOssi at the party to park cars, and an intoxicated driver, who was a guest at the party, struck DiOssi with his vehicle. This Court held that DiOssi was a business invitee and thus Maroney was liable for his injuries because Maroney breached his duty to make the workplace premises reasonably safe. This Court did not directly address the issue of social host liability because "the focus of liability in [that] case [was] on the exposure of a business invitee to a dangerous activity which the property owner permitted to exist on his land."[28] This Court cautioned that its reversal of the lower court's decision "may not be read to extend the liability of a social host for injuries to other guests which are caused by tortious conduct attributable to the social host's dispensing of alcoholic beverages."[29]

Two jurisdictions, Massachusetts and North Carolina, recognize common law social host liability.[30] In McGuiggan v. New

**26.** DiOssi, 548 A.2d 1361.

**27.** Id. at 1364.

**28.** Id. at 1365.

**29.** Id. at 1369.

**30.** In addition to Massachusetts and North Carolina, New Jersey in Kelly v. Gwinnell, 96 N.J. 538, 476 A.2d 1219 (1984), and California, in Clendening v. Shipton, 149 Cal.App.3d 191, 196 Cal.Rptr. 654 (1983) recognized this type of rule. In New Jersey, the legislature limited the holding in Kelly. See Wagner v. Schlue, 255 N.J.Super. 391, 605 A.2d 294, 295 (1992). In California, the legislature effectively reversed Clendening. See Cal. Bus. & Prof.Code § 25602(b), (c) (West 2006). We also recognize that some courts have recog-

nized social host liability in cases where the host served alcohol to a minor. See, e.g. Rangel v. Parkhurst, 64 Conn.App. 372, 779 A.2d 1277, 1281–82 (2001) (where the court held that a social host or purveyor of alcohol was liable to the minor served or to innocent third parties thereafter injured if the damages were proximately caused by the service of alcohol and the minor's consumption of it. In this case, however, the parents did not supply or purvey alcohol to the drunk driver, they could not be held liable); Martin v. Marciano, 871 A.2d 911 (R.I.2005) (where a property owner who allowed underage drinking on her property had a duty to injured persons as a matter of law. The court held that the mother had a duty to protect guests against reasonably foreseeable results of the drinking she allowed, and it remanded to the lower court to determine whether she was liable).

*England Tel and Tel. Co.*, the Supreme Judicial Court of Massachusetts stated that absent a controlling statute, the issue of social host liability is one to which the "court may properly apply common law principles." [31] After further analysis, however, the court decided that particular case before them did "not present a case for social host liability." [32] In *Hart v. Ivey*, the Supreme Court of North Carolina adopted social host liability.[33] In that case, the defendants argued that "there is not a common law negligence claim against a social host for serving alcoholic beverages .... [and] argue[d] that there are many implications from establishing such a claim...." [34] The North Carolina court stated that it had not created a new cause of action, but had simply applied "established negligence principles." [35]

In *DiOssi*, this Court noted that although "[t]he liability of the social host has not been the subject of such purposeful statutory regulation," several other areas of the sale and use of alcohol are heavily regulated, indicating that the General Assembly's awareness of the various issues relating to alcohol, and that it has made policy choices in the areas where regulation would be most effective.[36] We observed that "[m]ost courts which have faced the issue [of social host liability] have deferred to legislative process where such controversial public policy issues might be resolved through societal consensus." [37] We reaffirm that observation. The rationale for not extending liability to a social host is that one who consumes alcohol is the sole proximate cause of any injury he causes to a third person.[38] The inability of a social host to control a guest once the guest leaves the host's home can lead to "significant financial burdens." [39] Furthermore, as we have consistently declined to create a common law dram shop cause of action, it would be anomalous for social hosts to have greater legal responsibility than trained, licensed and regulated bartenders.

In our opinion, the creation of a cause of action against a social host raises controversial and competing public policy issues that are best addressed by the General Assembly, not this Court. Accordingly, we also affirm the Superior Court's judgment on that issue.

---

**31.** 398 Mass. 152, 496 N.E.2d 141, 143 n. 5 (1986) ("We acknowledge that the Legislature generally may establish, limit, or bar a social host's liability for injuries caused by the alcohol-induced negligent conduct of a guest to whom the host served an alcoholic beverage. Barring a controlling statute, however, the subject is one to which this court may properly apply common law principles.").

**32.** *Id.* at 146.

**33.** 420 S.E.2d at 177.

**34.** *Id.* at 178.

**35.** *Id.* It should be noted, however, that *Hart* involved an eighteen-year-old intoxicated guest. As the court in *McGuiggan* stated, "[i]t is easier to find a violation of a standard of reasonableness when the intoxicated guest is underage, a person whom, generally in this country, it is thought to be wrong to furnish an alcoholic drink." 496 N.E.2d at 146.

**36.** *DiOssi*, 548 A.2d at 1364.

**37.** *Id.* at 1365.

**38.** *See Johnston v. KFC Nat'l Mgmt. Co.*, 71 Haw. 229, 788 P.2d 159, 161 (1990); *See also Overbaugh v. McCutcheon*, 183 W.Va. 386, 396 S.E.2d 153, 157 (1990) ("The rule was based on the obvious fact that one could not become intoxicated by reason of liquor furnished him if he did not drink it.")

**39.** *DiOssi*, 548 A.2d at 1365.

## CONCLUSION

For the foregoing reasons, the judgments of the Superior Court are affirmed.