# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| LISA POUSSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No: S23C-04-020 MHC |
| | ) | |
| LIANNA D'ANDREA, SUN | ) | |
| COMMUNITIES, INC. AND BLUE | ) | |
| WATER HOSPITALITY | ) | |
| MANAGEMENT, LLC | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Submitted: January 26, 2026
Decided: March 31, 2026

*Upon Consideration of Defendant's Motion for Summary Judgment,*
**GRANTED IN PART** and *Defendant's Motion in Limine –* **DENIED.**

Michael P. Minuti, Esquire, McCann, Dillon, Jaffe & Lamb, LLC *Attorney for Plaintiff*

Paul A. Bradley, Esquire, Maron, Marvel, Bradley, Anderson & Tardy, LLC, *Attorney for Defendant*

**CONNER, J**

# INTRODUCTION

Before the Court is Sun Communities, Inc. and Blue Water Hospitality Management, LLC's (collectively "Defendants"), Motion for Summary Judgment, Defendants' Motion in Limine to preclude Mark Monteith from testifying as an expert, and Lianna D'Andrea's ("Defendant D'Andrea") Motion in Limine to preclude testimony of Mark Monteith regarding any wrongdoing on her part.[1] Defendants seek summary judgment on Lisa Pousson's ("Plaintiff") claims for negligence against Defendants (Counts III, IV, and V), negligent entrustment against Defendants (Counts VI and VII), and premises liability against Defendant Sun Communities (Count X). For the reasons stated hereinafter, the Motion for Summary Judgment is PARTIALLY GRANTED, Defendants' Motion in Limine is DENIED, and Defendant D'Andrea's Motion in Limine is DENIED.

# STATEMENT OF FACTS

During Labor Day weekend in 2021, Plaintiff was a guest at the Massey's Landing Resort, along with her niece, Defendant D'Andrea and other family members. Defendant Sun Communities is the owner of Massey's Landing. Blue Water Management managed the resort. Both Plaintiff and Defendant D'Andrea rented golf carts during their stay at Massey's Landing. Defendant D'Andrea was

---

[1] Lianna D'Andrea was formerly known as Lianna Angrisani, but her last name has been changed to D'Andrea.

assigned golf cart number ST 7 and Plaintiff was assigned golf cart number 68.[2] In order to rent a golf cart, guests must present their driver's license and sign a golf cart liability waiver acknowledging the instructions and the rules, such as no speeding or reckless driving.[3]

There are two incidents that are relevant to the case. The first incident, which is not the incident that led to this lawsuit, occurred on September 4, 2021, at 3:15 p.m. ("3:15 incident"), and involved Plaintiff's son, Matthew Pousson.[4] Resort guests reported Mr. Pousson to Defendants as a potential underage drunk driver on a golf cart with young kids. Madison Blewitt, the manager on duty, investigated the report, observed Mr. Pousson operating the golf cart, and told him to slow down and not to drive the golf cart after drinking.[5] A verbal argument began between Mr. Pousson and the resort guests who reported him to management. Shortly thereafter, additional members from the Pousson/D'Andrea party arrived, who were "clearly intoxicated," and began arguing with the reporting party.[6] Guests asked for security, however, there were no security guards on the premises. Ms. Blewitt asked her assistant manager, Candy Gulley, to come into work early to help with the incident. Ms. Gulley and Ms. Blewitt met with members of the Pousson/D'Andrea party and

---

[2] Pl.'s Resp. to Defs.' Mot. for Summ. J., D.I. 115, at 6.
[3] Defs.' Mot. for Summ. J., D.I. 107, at 1.
[4] Pl.'s Resp. to Defs.' Mot. for Summ. J., D.I. 115, at 6.
[5] Pl.'s Resp. to Defs.' Mot. for Summ. J., D.I. 115, Ex. E.
[6] *Id.*

informed them that Mr. Pousson could no longer drive golf carts.[7]  If Mr. Pousson continued driving the golf carts they would be confiscated.  Ms. Blewitt and Ms. Gulley also informed the party that they all need to "slow down while driving around the Resort."[8]  It is unclear whether Defendant D'Andrea was present during this incident.

The incident that led to this lawsuit occurred on the same day, about an hour and forty-five minutes later, approximately 5:06 p.m. on September 4, 2021.[9]  Plaintiff was a passenger in a recreational golf cart, numbered ST 7, operated by Defendant D'Andrea, traveling on the property.  While operating the golf cart, Defendant D'Andrea attempted to make a U-turn, which allegedly caused Plaintiff to be ejected from the golf cart and land on the ground.  Plaintiff was injured and taken to the hospital, where it was discovered that Plaintiff was intoxicated at the time of the accident with a serum alcohol level of .231.[10]  Police arrived at Massey's Landing and conducted a sobriety test on Defendant D'Andrea.  Defendant D'Andrea was not intoxicated.[11]  The posted speed limit at the resort was 5 ½ miles per hour.[12]

---

[7] *Id.*
[8] *Id.*
[9] Pl.'s Resp. to Defs.' Mot. for Summ. J., D.I. 115, at 7.
[10] Defs.' Mot. for Summ. J., D.I. 107, at 2.
[11] *Id.*
[12] *Id.*

4

Plaintiff suffered injuries as a result of this incident. Plaintiff initiated this lawsuit on April 18, 2023. Plaintiff amended the Complaint on August 31, 2023. Defendants filed the instant Motion for Summary Judgment on December 19, 2025. Plaintiff filed her response on January 13, 2026. Defendants filed its reply brief on January 26, 2026.

## STANDARD OF REVIEW

Under Delaware Superior Court Civil Rule 56, a party is entitled to summary judgment when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.[13] If the moving party satisfies the initial burden, then the burden of proof shifts to the nonmoving party to establish the existence of genuine issues of material facts.[14] The Motion will be viewed in the light most favorable to the non-moving party. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[15] "If the evidence is *merely colorable, or is not significantly probative,* summary judgment may be granted."[16]

---

[13] Super. Ct. Civ. R. 56(c).
[14] *Brown v. Dollar Tree Stores, Inc.*, 2009 WL 5177162, at *2 (Del. Super. Ct. 2009).
[15] *Health Sols. Network, LLC v. Grigorov*, 2011 WL 443996, at *2 (Del. 2011) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986)).
[16] *Id.* at 250-51.

**DISCUSSION**

## I.     The Motions in Limine are Denied

Defendants and Defendant D'Andrea filed separate Motions in Limine to address Mark Monteith and his ability to testify in the present case. Defendants filed a Motion in Limine to exclude Mr. Monteith from testifying as a RV/Campground expert.[17]  Defendant D'Andrea filed a Motion in Limine to preclude Mr. Monteith from testifying regarding any wrongdoing on her part.[18]  For the reasons stated hereinafter, both Motions in Limine are denied.

### A.     Defendants' Motion in Limine to Exclude Mr. Monteith from Testifying as a RV/Campground Expert is Denied.

Defendants' Motion in Limine to exclude Mr. Monteith from testifying as a RV/Campground expert is denied.[19]  The Motion in Limine will be addressed in the Motion for Summary Judgment decision because many of Defendants' arguments rely upon the Court granting the Motion in Limine.  Mr. Monteith is qualified to testify as a RV/campground expert, and therefore, the Defendants' Motion in Limine is denied, and the Motion for Summary Judgment regarding the exclusion of  Mr. Monteith's testimony is denied.

---

[17] Defs.' Mot. in Lim., D.I. 106.
[18] Def. D'Andrea's Mot. in Lim., D.I. 105.
[19] Defs.' Mot. in Lim., D.I. 106.

The admissibility of expert testimony is governed by D.R.E. 702, which states:

> [i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.[20]

In order to be admissible, the expert testimony must be relevant and reliable.[21] Delaware courts have interpreted relevance to include opinions that "relate to an issue in the case and assist the trier of fact to understand the evidence or to determine a fact at issue."[22] Evidence is reliable if it is "based on the methods and procedures of science, rather than subjective belief or speculation."[23] It is the job of the trial judge to act as the "gatekeeper" and assess which expert testimony should reach the factfinder.[24]

> 1. *Mr. Monteith is qualified to offer opinions as a RV and Campground Expert.*

Mr. Monteith has sufficient knowledge, skill, experience, training or education to opine as to the standard of care in the present case. As aforementioned,

---

[20] D.R.E. 702.
[21] *McLeod v. McLeod*, 2015 WL 854299, at *1 (Del. Super. Ct. 2015).
[22] *Id.*
[23] *Id.*
[24] *Id.*

Defendants argue that Mr. Monteith is not qualified to offer opinions as a RV and Campground expert. While he is not a specified campground expert, he has education, training, and experience in the property management of college campuses, institutions, multiuse high-rises, golf courses, and recreational centers.[25] Mr. Monteith testified that resort management is a type of property management.[26] Mr. Monteith testified that he has experience developing policies for managing golf cart paths.[27] He has experience working on a campground case, but does not think he issued an expert report on the matter. As a forensic investigator, Mr. Monteith applies expertise in the areas of site safety, premises liability, and professional practice and standards.[28] He is qualified to offer opinions on "best practices" as it applies to facilities with a high volume of individuals on the premises, similar to the present case.[29]

Defendants argue that Mr. Monteith is offering testimony as an accident reconstructionist, however, that is incorrect. Mr. Monteith's focus is on premises safety. In project management, there are often issues with equipment. In those situations, he assisted with establishing rules, signage, and warnings about the equipment and how it should be used.[30] In the present case, there were a plethora of

---

[25] Pl.'s Resp. to Defs.' Mot. in Lim, D.I. 114, Ex. I, at 25:10-23.
[26] *Id.* at 25:5-9.
[27] *Id.* at 32:18-24.
[28] Pl.'s Resp. to Defs.' Mot. in Lim., D.I. 114, at 15.
[29] *Id.* at 15 (*see also* Ex. I, at 166:20-24).
[30] Pl.'s Resp. to Defs.' Mot. in Lim, D.I. 114, Ex. I at 44:24-46:23.

writings to review regarding golf cart operation. As an architect, he can provide an opinion based on the "rudimentary physics that all architects have to apply."[31] In the present case, Mr. Monteith opines that centrifugal force caused the Plaintiff to be ejected from the golf cart, which is reinforced by the publications that state a person will be ejected from the rear seats of a golf cart if the vehicle is traveling at high speed when turning.[32] He did not perform a further analysis on centrifugal force, as he is not an accident reconstructionist, but rather based his opinion on testimony and the findings on the scene.[33]

Defendants also argue that Mr. Monteith does not have expertise in operating or managing golf carts, however, this is not sufficient to exclude him as a witness. He has experience working on projects that involve pathways used by both motor vehicles and pedestrians.[34]

For these reasons, the Court finds that Mr. Monteith is qualified to testify as an expert regarding RV/Campgrounds.

> 2. *Mr. Monteith's opinions are based on credible evidence.*

Mr. Monteith has a sufficient factual basis to offer expert testimony. Defendants seek to exclude Mr. Monteith due to a factual misunderstanding during

---

[31] *Id.* at 110:4-20.
[32] *Id.*
[33] *Id.* at 111:7-13.
[34] *Id.* at 29:1 – 31:11.

his deposition testimony. During his deposition, Mr. Monteith seemed to misunderstand who was driving the golf cart in the 3:15 incident, as he believed it was Defendant D'Andrea.[35] However, this alone is not sufficient to preclude Mr. Monteith from offering expert testimony.

Delaware courts have recognized that generally, "the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is for the opposing party to challenge the factual basis of the expert opinion on cross-examination."[36] However, expert testimony must be excluded if it is not based upon an understanding of the fundamental facts of a case, as it would provide no assistance to a jury.[37]

In the present case, Mr. Monteith's misunderstanding about who was driving the golf cart during the 3:15 incident does not demonstrate a complete lack of understanding the fundamental facts of the case. Mr. Monteith testified that he would need to review the specifics as to which golf cart was cited earlier in the day, but believed it was "the same golf cart or same party, if not the same golf cart involved in that, the person who rented the golf cart."[38] By misunderstanding that it may have been Defendant D'Andrea who drove the golf cart during the 3:15

---

[35] Defs.' Mot. in Lim., D.I. 106, at 11.
[36] *Perry v. Berkley*, 996 A.2d 1262, 1271 (Del. 2010).
[37] *Id.*
[38] Pl.'s Resp. to Defs.' Mot. in Lim., D.I. 114, Ex. I, at 50:17 – 51:6.

incident, and not Mr. Pousson, Defendants argue the opinion should be precluded. However, Defendants may address this issue through vigorous cross-examination. Mr. Monteith's report is based upon an adequate factual foundation and his testimony would assist a jury. His expert report demonstrates that he reviewed deposition transcripts, litigation documents, incident reports, the police report, medical records, video footage, and other relevant documents.[39]

For these reasons, the Court finds that Mr. Monteith's opinion is supported by sufficient evidence.

### 3. *Mr. Monteith's opinion utilizes reliable principles and methods.*

Mr. Monteith's opinions were formed utilizing reliable principles and methods. Defendants argue that Mr. Monteith "cherry picks" facts and sections from literature to support his claim.[40] Additionally, in his report, Mr. Monteith does not address that Plaintiff was intoxicated at the time of the accident.

In *State v. Dale*, the Court held that "[t]he different depth with which [an expert] pursued particular lines of investigation and the different assumptions they made are readily subject to cross-examination and to evaluation by the fact finder for credibility and weight."[41] "An expert's testimony will only be excluded in the

[39] Pl.'s Resp. to Defs.' Mot. in Lim., D.I. 114, Ex. B, at 3-4.
[40] Defs.' Mot. in Lim., D.I. 106, at 13.
[41] *State v. Dale*, 2021 WL 5232344, at *5 (quoting Henlopen Hotel, 2020 WL 233333, at *4; *Perry v. Berkley*, 996 A.2d 1262, 1271 (Del. 2010)).

narrow circumstance that the expert has completely neglected the core facts of the case."[42]

In his report and deposition, Mr. Monteith gave greater weight to Plaintiff's deposition testimony rather than the reporting officer's police report.[43] In Plaintiff's deposition testimony, she testified that she was holding on to the handrail while riding on the back of the golf cart. In her statement to the police, however, she stated she was not holding on right. Mr. Monteith reviewed the police report and other relevant evidence and chose to give certain evidence greater weight than others in reaching his decision.

Additionally, Mr. Monteith did not address the toxicology report. He testified that he did not address the toxicology report because he is not a doctor and is not qualified to give opinions on such. In Mr. Monteith's deposition, he was asked if he considered other possible causes for Plaintiff's ejectment from the vehicle, in which Mr. Monteith responded, "I tried to think of every possible other scenario."[44] Defendants may explore the methodology and the different avenues Mr. Monteith explored to reach his opinion on cross-examination, as it is an issue of credibility, not admissibility.

---

[42] *Id.* (quoting *Smack-Dixon v. Wal-Mart, Inc.,* 2021 WL 3012056, at *6 (Del. Super. Ct. 2021)).

[43] Pl.'s Resp. to Defs.' Mot. in Lim., D.I. 114, Ex. I, at 65:12 – 66:7.

[44] *Id.* at 60:19 – 61:20.

Defendants argue that Mr. Monteith has no qualification to reach the opinion that the accident would not have happened if Defendant D'Andrea complied with the rules and regulations, as he is not an accident reconstructionist. However, Mr. Monteith offers an opinion on Defendants' management of the resort and their failure to remove the carts from the members of the D'Andrea and Pousson parties. As an expert in architecture, premise safety, and management, he is qualified to give that opinion. As aforementioned, he explained that he does not offer an opinion as an accident reconstructionist, but rather uses his knowledge of rudimentary physics and relevant literature to support his findings that a person will be ejected from a golf cart if turning at high rates of speed.

Furthermore, in his deposition, Mr. Monteith outlines his analysis for reaching his opinions. First, Mr. Monteith stated he had to establish whether the conditions were unreasonably dangerous.[45] He began by reviewing the first-hand descriptions of the incident.[46] Then, he analyzed the data regarding the golf carts turning radius, the width of the roadway, and the golf cart's traveling speed. Based on that information, Mr. Monteith was able to opine that the golf cart was traveling at a speed fast enough for a passenger to be ejected.[47] He analyzed other theories and ruled out other causes. After analyzing how the exact accident occurred, he analyzed

---

[45] *Id.* at 43:17-18.
[46] *Id.* at 43:18-20.
[47] *Id.* at 43:20 – 44:10.

how it was allowed to occur, and how the golf carts were rented and used on the site.[48]

Then, Mr. Monteith used his experience, training, and knowledge in property management to establish the standard of care regarding the enforcement of policies and procedures.[49] Defendants had a duty to monitor the resort and enforce its rules and regulations. Mr. Monteith opined that Plaintiff's injuries were caused by the reckless operation of a golf cart by Defendant D'Andrea, who operated the golf cart in violation of Defendants' rules and regulations. In his report, Mr. Monteith states that it was known by Defendants that the Angrisani/Pousson party were driving recklessly. In forming his opinion, he relied upon: (1) the EZ-GO TXT Golf Cart Owner's Guide, (2) The *Journal of Trauma, Injury, Infection, and Critical care*; (3) an *American Journal of Preventative Medicine* article on Golf Cart-related injuries in the US; (4) Defendant's own rules & regulations; and (5) the *Park and Recreation Professional's Handbook*.[50] Mr. Monteith reviewed available testimony, evidence, and written materials, and relied upon his experience in site safety, premises liability, and professional practice of recreational properties to reach his decision. Defendants may conduct vigorous cross-examination to question his findings and the evidence he gave greater weight.

---

[48] *Id.* at 44:24 – 46:23.
[49] Pl.'s Resp. to Defs.' Mot. in Lim., D.I. 114, at 28.
[50] *Id.* at 29.

14

For these reasons, the Court finds that Mr. Monteith's opinions were formed utilizing reliable principles and methods. Defendants' Motion in Limine is denied, and any claim for summary judgment based on the expert's testimony is denied.

**B.      Defendant D'Andrea's Motion in Limine to Preclude Testimony of Mr. Monteith Regarding Wrongdoing on her Part is Denied.**

For the same reasons stated above, Defendant D'Andrea's Motion in Limine is denied. Defendant D'Andrea argues that because Mr. Monteith is not an accident reconstructionist, he cannot offer an opinion as to whether Defendant D'Andrea was operating the golf cart in an unsafe manner. Defendant D'Andrea argues that Mr. Monteith is merely weighing the evidence and fact finding, rather than offering an expert opinion. It would be extremely prejudicial to Defendant D'Andrea if Mr. Monteith offers testimony regarding her wrongdoing because his opinion has no basis in fact or in law.

Plaintiff, on the other hand, argues that Mr. Monteith provided a highly developed technical expert opinion, based on sufficient evidence and reliable principles and methods. Mr. Monteith reviewed the site, compared the physical conditions of the site with the characteristics of the golf cart, collected photos and measurements of the site, and gathered additional information about the property. Mr. Monteith testified that he has experience evaluating recreational premises and explained the process for how he reached his decision.

As aforementioned, the different depth and lines of investigation an expert takes in reaching an expert opinion may be explored on cross-examination. For the reasons stated above, Mr. Monteith is qualified to offer the opinions he provided in his expert report. His opinion on Defendant D'Andrea's alleged wrongdoing is an issue of credibility, not admissibility. Mr. Monteith is not an accident reconstructionist, nor is he an expert in golf carts. However, he has experience with recreational sites and pathways utilized by pedestrians and motorized vehicles, such as golf carts. Mr. Monteith had a sufficient factual foundation in forming his opinion and relied upon reliable principles and methods. He did not only rely upon statements from others, but performed his own evaluation using the same methodology he had performed in over 100 prior premises evaluations.

Defendant D'Andrea may conduct vigorous cross-examination to attack the credibility of Mr. Monteith, however, his testimony is admissible. For these reasons, Defendant D'Andrea's Motion in Limine to preclude Mr. Monteith from testifying regarding any wrongdoing on her part is denied.

## II. Defendants' Waivers are Insufficient Under Delaware Law to Release Defendants from Liability

Defendants cite to three contract provisions between the parties attempting to release Defendants from liability. However, none of the release of liability waivers are enforceable.

Delaware law allows a party to limit liability for its own negligence, so long as the waiver is not unconscionable, unambiguous, and not against public policy.[51] Delaware law disfavors contractual provisions that release a party from its own fault or wrongs, therefore, "as a matter of public policy, a provision exonerating a party for its own negligence will only be given effect if the language 'makes it crystal clear and unequivocal that the parties specifically contemplated' such a release."[52] In order for the provision to be considered "crystal clear and unequivocal," the language must specifically refer to the negligence of the protected party.[53]

There is no evidence that the waivers are unconscionable. Delaware courts have found unconscionability when there is a deprivation of meaningful choice.[54] In the present case, Plaintiff willingly chose to stay at Massey's Landing and sign the waivers. For this reason, the waivers are not unconscionable.

However, the waivers are ambiguous. The language is not "crystal clear" and therefore does not exonerate the Defendants from their own alleged negligence. The three liability waiver provisions will be analyzed hereinafter.

---

[51] *Ketler v. PFPA, LLC*, 132 A.3d 746, 747 (Del. 2016).
[52] *Slowe v. Pike Creek Ct. Club, Inc.*, 2008 WL 5115035, at *2 (Del. Super. Ct. 2008).
[53] *Hong v. Hockessin Athletic Club*, 2012 WL 2948186, at *2 (Del. Super. Ct. 2012).
[54] *Ketler*, 132 A.3d at 748.

**A.** **The Water Feature Waiver, Contract, and Release of Liability is insufficient under Delaware law.**

The Water Feature Waiver, Contract, and Release of Liability is ambiguous. It is unclear whether the waiver expressly releases Defendants from claims arising from their own alleged negligence. While Defendants cite to a provision in the contract that generally refers to all of the amenities at Massey's Landing, the title of the contract and the references to water amenities in other sections make it unclear whether the contract applies solely to water amenities or all amenities. The provision states the following:

> I understand that the amenities at The Resort at Massey's Landing are also shared by others that staff and management have no control over and I agree to assume all liability for myself, child/children, or ward named below, even if arising from negligence from other participants, employees, or management of the Resort at Massey's Landing.[55]

The provision includes clear and equivocal language exonerating the Defendants from their own negligence, but it is not clear if it applies to solely water features, or if it extends to golf cart usage. To further support the ambiguity of whether a golf cart is considered an amenity, there is a map of Massey's Landing that lists the amenities at the resort, and it does not list "golf carts" or "golf cart rentals" as an amenity.[56] It is unclear whether claims arising from golf cart usage is covered under this waiver.

---

[55] Defs.' Mot. for Summ. J., D.I. 107, Ex. K.
[56] Pl.'s Resp. to Defs.' Mot. in Lim., D.I. 114, Ex. B. at 5.

As aforementioned, Delaware law disfavors provisions exonerating a party from incidents arising from its own negligence. Delaware law is very clear that waivers must be clear and unequivocal. This waiver is ambiguous. Therefore, the Water Feature Waiver, Contract, and Release of Liability is not a sufficient waiver under Delaware law.

## B. The Golf Cart Liability Waiver is insufficient under Delaware law.

The Golf Cart Liability waiver is insufficient under Delaware law because it does not contain language that explicitly exonerates Defendants from claims arising from their own alleged negligence. The golf cart waiver states the following:

> In exchange for the privilege to rent this golf cart, you are accepting the responsibility for your own negligence. You must safely operate this vehicle and adhere to all rules set forth by the Resort at Massey's Landing. You are liable for all mechanical and legal claims that may arise from the rental of the golf cart. You voluntarily agree to accept the risks of using a golf cart, and on behalf of yourself, your personal representatives, and your heirs hereby voluntarily release the aforementioned business, and its owners, officers, employees, and agents from any loss of life and/or loss of service, in law or equity, that may in any manner arise out of the use of the golf cart. In no way should the renting of this vehicle be seen as The Resort at Massey's Landing endorsing this vehicle as a form of recreation or fun.[57]

---

[57] Pl.'s Resp. to Defs.' Mot. in Lim., D.I. 114, Ex. D.

19

The liability waiver states that the party is liable for all legal claims, but the provision does not specifically exonerate Defendants from claims of their own negligence. The waiver states that the party will accept responsibility for their own negligence.

Defendants do not attach the Golf Cart Liability Waiver signed by Plaintiff, but rather the waiver signed by Defendant D'Andrea.[58]  Plaintiff, however, attached the waiver signed by Plaintiff in its Response to the Motion for Summary Judgment.[59]  Nonetheless, the language of the liability waiver is not sufficient under Delaware law.

Delaware law is clear that liability waivers must be clear and unequivocal. The Golf Cart Liability Waiver is not sufficient to exonerate Defendants from claims arising from their own negligence.

### C.    The Short-Term Rental Agreement Disclaimer is insufficient under Delaware law.

Similar to the reasons stated above, the Short-Term Vacation Rental Agreement Waiver is not sufficient to exonerate Defendants from claims arising from their own alleged negligence under Delaware law.  The disclaimer states the following:

> The guest(s) agrees to indemnify and hold harmless The Resort at Massey's Landing, their premises, and/or any agent involved with this rental agreement for any loss, liability, damage or cost the guest(s) may incur due to his/her occupancy of the premises or from participation in

---

[58] Defs.' Mot. in Lim., D.I. 106, Ex. B.
[59] Pl.'s Resp. to Defs.' Mot. for Summ. J., D.I. 115, Ex. D.

any activities undertaken at The Resort at Massey's Landing or outlying waters. There are no refunds due to inclement weather or power outages.[60]

The disclaimer does not specifically exonerate Defendants from actions arising from their own alleged negligence. Delaware courts have held that merely stating "any loss" or "any claim" is insufficient to exonerate a party from their own negligence.[61]

For these reasons, the waiver is not "crystal clear or unequivocal" and does not exonerate Defendants from actions arising from their own negligence. The waiver is insufficient under Delaware law.

### III. Summary Judgment for Counts III and V, Negligence, Must be Denied

There is a genuine issue of fact as to whether Defendants breached a duty owed to Plaintiff. Defendants argue that if the Motion in Limine to preclude Mr. Monteith is granted, then Plaintiff has no evidence to establish the elements of duty and breach for the negligence claim. However, as previously ruled, the Court denied the Motion in Limine. There is a genuine issue of fact as to whether Defendants breached a duty owed to Plaintiff.

Mr. Monteith's expert report creates enough factual dispute to survive a Motion for Summary Judgment. In his report, Mr. Monteith opines that Defendant D'Andrea operated the golf cart in violation of the rules/regulations established by

---

[60] Defs.' Mot. for Summ. J., D.I. 107, Ex. N.
[61] *Strand-Yarbray v. Bike Delaware, Inc.*, 2024 WL 4950314, at *1, *3 (Del. Super. Ct. 2024).

Massey's Landing.[62]  Mr. Monteith opines that operating the golf cart in such a manner caused Plaintiff to be ejected from the golf cart.  Defendants, as the managers of the golf cart rentals at Massey's Landing, failed to properly instruct the guests about the dangers of making sharp turns on the golf carts.  Furthermore, Defendants were aware that the guests were breaking the resort rules on the day of the accident.  As aforementioned, Mr. Pousson, was driving recklessly around the Resort.  There were also multiple reports of both golf carts from the Pousson/D'Andrea party driving at excessive speeds on the day of the incident.[63]  The Defendants failed to enforce their own rules and safety procedures, which could have prevented the accident.  Mr. Monteith opines that Defendants' failure to mitigate the dangerous conditions "violated the standard of care for recreational facilities management."[64]

Furthermore, there are discrepancies between deposition testimonies.  Ms. Gully testified that she believed Defendant D'Andrea was present during the conversation after the 3:15 incident, where she instructed all party members to slow down when driving.[65]  However, she later testified that she was unsure if Defendant D'Andrea was present.[66]  Additionally, an incident report from Ms. Blewitt states that she and Ms. Gulley informed the Pousson/D'Andrea party that "everyone in

---

[62] Pl.'s Resp. to Defs.' Mot. for Summ. J., D.I. 115, Ex. B, at 17.
[63] Pl.'s Resp. to Defs.' Mot. for Summ. J., D.I. 115, Ex. N.
[64] Pl.'s Resp. to Defs.' Mot. for Summ. J., D.I. 115, Ex. B, at 17.
[65] *Id.* at 15.
[66] Pl.'s Resp. to Defs.' Mot. for Summ. J., D.I. 115, Ex. F, at 73:2-11.

their party needs to slow down while driving around the Resort."[67]  After the 3:15 incident was reported, members from both the Pousson and D'Andrea party began fighting with the reporting guests.  Plaintiff argues that the golf carts should have been taken after the 3:15 incident, as required by Defendants' rules and regulations. Defendants' rules and regulations prohibit driving while under the influence, speeding, and operating improperly.

Mr. Monteith's findings create a genuine issue of material fact as to the standard of care, and whether Defendants breached the standard of care. Furthermore, there are discrepancies as to whether Defendant D'Andrea was present during the conversation after the 3:15 incident.  Therefore, this issue cannot be decided on a Motion for Summary Judgment.

### IV. Summary Judgment on Count IV, Negligence, Must be Granted

Summary Judgment must be granted for Count IV, negligence, against Defendant Sun Communities.  Under Count IV, Plaintiff alleges that Defendant D'Andrea was served alcohol and drove a golf cart after her and members of her party had been drinking.[68]  Plaintiff claims that she was harmed by Defendant Sun Communities knowing and allowing Defendant D'Andrea to operate a vehicle after consuming alcohol.  Defendant Sun Communities had notice that Defendant

---

[67] Pl.'s Resp. to Defs.' Mot. for Summ. J., D.I. 115, Ex. E.
[68] Am. Compl., D.I. 27, at 10 ¶ 52 - 11 ¶ 55.

D'Andrea and other members of her party had been drinking, and therefore, were a danger to the other resort guests. Defendants argue that such a claim is impermissible under Delaware law. In her response to Defendants' Motion for Summary Judgment, Plaintiff argues that the negligence claim does not allege that Defendant Sun Communities was negligent for serving alcohol to Defendant D'Andrea, but rather alleges that Defendant Sun Communities knew about a dangerous condition and did not take steps to mitigate. The dangerous condition was created by allowing guests to drive golf carts after being overserved at the pool.

In the case, *Samson v. Smith*, the Court decided whether a plaintiff could recover on a theory that the conduct of a commercial business, in permitting the defendant to drink in excess, was the proximate cause of an accident and the plaintiff's injuries.[69] However, the Court held that "no cause of action against a tavern operator for injuries to third parties, caused by an intoxicated patron, exists in Delaware under either the common law or statutes regulating the dispensing of alcoholic beverages."[70]

In the case, *Shea v. Matassa*, the plaintiff brought a negligence claim against a bar that overserved a patron, who then drove drunk, and killed the plaintiff's husband.[71] The plaintiff argued that the Court should create a common law cause of

---

[69] 560 A.2d 1024, 1025 (Del. 1989).
[70] *Id.*
[71] *Shea v. Matassa*, 918 A.2d 1090, 1091-92 (Del. 2007).

action for dram shop liability to hold the bar responsible for her husband's death, because they negligently served alcohol to the patron, knowing he would drive while intoxicated.[72]  The case was dismissed by the Superior Court, and the plaintiff appealed.[73]  The Superior Court's decision was affirmed.  The Supreme Court found that it is the General Assembly's job to decide whether a cause of action exists, not the Court.[74]  There is no cause of action for this claim in Delaware.

In the present case, Plaintiff's Amended Complaint for Count IV Neglignece states:

> As a foreseeable consequence of Defendants SUN COMMUNITIES, INC. and MASSEY'S landing allowing, permitting, or otherwise having knowledge that Defendant LIANNA ANGRISANI intended to operate a recreational vehicle upon their premises after consuming alcohol, Plaintiff was caused to be directly and proximately injured through the negligence of all Defendants.[75]

Plaintiff's argument, despite Plaintiff's contentions, seeks to impose liability to Defendant Sun Communities for allowing Defendant D'Andrea to drive after serving her alcohol. Delaware courts have clearly found that liability will not be imposed in these circumstances, even if the bar knew the patron would drive after drinking alcohol.  Additionally, there is evidence Defendant D'Andrea was not intoxicated at

---

[72] *Id.* at 1092.
[73] *Id.*
[74] *Id.* at 1095-96.
[75] Am. Compl., D.I. 27, ¶ 54.

the of the accident.[76] Defendant Sun Communities cannot be held liable for allowing Defendant D'Andrea to drive a golf cart after serving her alcohol.

For these reasons, summary judgment for Count IV negligence should be granted.

### V. Summary Judgment on Plaintiff's Negligent Entrustment Claims, Counts VI and VII, is Granted

Summary judgment must be granted for Plaintiff's negligent entrustment claims. Plaintiff has not produced evidence that Defendant D'Andrea was a reckless or incompetent driver at the time the Defendants entrusted the golf cart to Defendant D'Andrea.

Delaware courts have found that the elements of negligent entrustment are as follows: "(1) entrustment of the automobile, (2) to a reckless or incompetent driver whom, (3) the entrustor has reason to know is reckless or incompetent, and (4) resulting damages."[77] "[T]he key element in the tort of negligent entrustment . . . is the foreseeability of the harm . . . ."[78]

When viewing the facts in the light most favorable to the Plaintiff, there is no dispute of material fact as to whether the incident was foreseeable. The Court in *Finkbiner v. Mullins* briefly discussed the general rule in Delaware, that unless there is a statute that imposes liability, mere ownership of a vehicle involved in an accident

---

[76] *Defs.' Mot. For Summ. J., D.I. 107, at 2.*
[77] *Perez-Melchor v. Balakhani*, 2006 WL 3055852, at *4 (Del. Super. Ct. 2006).
[78] *Id.*

generally does not subject the vehicle owner to liability for the negligence of another.[79] However, the Court notes an exception for claims under negligent entrustment. The owner becomes liable "if [the owner] knows or has reason to believe at the time [the owner] entrusts the vehicle to another that the driver is incompetent."[80] Delaware courts have held that the "standard for proving entrustment to a reckless or incompetent driver is high in Delaware."[81]

In the present case, Plaintiff has not produced evidence that Defendant D'Andrea was a reckless or incompetent driver prior to the incident, or that Defendants knew or had reason to believe she was reckless or incompetent. Instead, Plaintiff argues that Defendant D'Andrea was driving recklessly on the day of the incident, and Defendants became aware of her reckless driving after multiple guests reported the Pousson/D'Andrea party's golf cart numbers. This alone is not sufficient for a negligent entrustment claim. At the time of the entrustment, it was unforeseeable that Defendant D'Andrea would be a reckless or incompetent driver.

Additionally, Plaintiff argues that Defendant D'Andrea was reckless and incompetent because she was not properly advised by Defendants on how to

---

[79] *Finkbiner v. Mullins*, 532 A.2d 609, 617 (Del. Super. Ct. 1987).
[80] *Id.* at n.3.
[81] *Berger v. Millstone*, 2001 WL 1628308, at *2 (Del. Super. Ct. 2001).

effectively operate the golf cart. However, this is not sufficient to support a negligent entrustment claim.

For these reasons, the Court must grant summary judgment on Plaintiff's negligent entrustment claims.

## VI. Summary Judgment on Plaintiff's Premises Liability Claim, Count X, is Partially Granted

Viewing the facts in the light most favorable to the Plaintiff, there are issues of material fact that preclude the Court from granting summary judgment. In the Amended Complaint, Plaintiff alleges that Defendant Sun Communities:

> [K]new or should have known that the premises may have been improperly maintained which may have contributed to the happening of the incident and otherwise presented and created a hazardous and/or dangerous condition to persons lawfully utilizing same, including but not limited to, the Plaintiffs LISA POUSSON, in violation the aforesaid Town ordinance.[82]

Defendants argue that if the Motion in Limine to exclude testimony from Mr. Monteith is granted, Plaintiff does not have evidence of a dangerous condition on the premises that Defendant Sun Communities should have known and warned about. However, as aforementioned, the Motion in Limine is denied.

Mr. Monteith opined that Defendants created unreasonably dangerous conditions, which caused Plaintiff to be ejected from the golf cart. There is a genuine issue of material fact as to whether Defendant Sun Communities breached its duty

---

[82] Am. Compl., D.I. 27, at ¶ 89.

and whether unreasonably dangerous conditions were created by the failure to confiscate the golf carts from the Pousson and D'Andrea parties.

However, Plaintiff now seeks to argue that Defendant Sun Communities failed to properly maintain the premises by employing only 20 employees for 1,000 guests and failing to employ security.[83]  Defendants argue that this is the first time Plaintiff has made this argument, therefore it cannot be considered.  Negligence must be pled with particularity, and Plaintiff did not allege that Massey's Landing was inadequately staffed prior to summary judgment.

Delaware Superior Court Civil Rule 9 states, "[i]n all averments of fraud, negligence or mistake, the circumstances constituting fraud, negligence or mistake shall be stated with particularity."[84]  Delaware courts have found that "[t]he purpose of Rule 9(b) is one of fairness and notice."[85]

The Amended Complaint does not mention the number of staff or lack of security on the premises.  However, Plaintiff argues that the following provision is sufficient to put Defendants on notice of the claim:

> At all times mentioned, the Defendants knew or should have known that the premises may have been improperly maintained which may have contributed to the happening of the incident and otherwise presented and created a hazardous and/or dangerous condition to persons lawfully utilizing same, including but not limited to, the

---

[83] Pl.'s Resp. to Defs.' Mot. for Summ. J., D.I. 115, at 33.
[84] Del. Super. Ct. Civ. R. 9(b).
[85] *Murray v. Mason*, 244 A.3d 187,192 (Del. Super. Ct. 2020), *modified* (Jan. 5, 2021)(quoting *Fox v. Fox*, at 827 n.2, (citing *Chesapeake and Potomac Tel. Co. of Maryland v. Chesapeake Utilities Corp.,* 436 A.2d 314, 338 (Del. 1981)).

Plaintiffs LISA POUSSON, in violation the aforesaid Town ordinance.[86]

Plaintiff argues that Defendants had proper notice of this claim because Plaintiff alleged that Defendants had a duty to maintain the property and had control of the property. Therefore, Defendant Sun Communities knew or should have known that there was a dangerous condition on the property. However, this is not sufficient to put Defendants on notice of the claim for premise liability due to staffing issues. Plaintiff has not amended its Amended Complaint to assert the relevant facts or add facts to the premises liability claim.

Next, Defendants argue that even if the Court allows the claim, Plaintiff cannot prove the claim without expert testimony. Plaintiff does not have an expert to testify about the lack of security and staffing shortage. In his deposition, Mr. Monteith testified that he believed there were approximately 1,000 guests at Massey's Landing that weekend.[87] He states that he did not provide an evaluation of how many people it takes to monitor 1,000 guests.[88] Mr. Monteith stated that he did not need to "speculate about a failure to maintain safe conditions because we had a reported instance of a failure to maintain safe conditions."[89] He opined that by breaking their own rules and failing to intervene, Defendants breached their duty to

---

[86] Am. Compl., D.I. 27, ¶ 89.
[87] Pl.'s Resp. to Defs.' Mot. for Summ. J., Ex. P, at 94:23 - 95:13.
[88] *Id.*
[89] *Id.* at 96:3-7.

monitor. Mr. Monteith does not testify about the number of staff compared to the number of guests.

Defendants cite to *Kaster v. Big Kahuna of Wilmington, Inc.*, where the Court found that "the number of security personnel required for a given number of people in a bar is not common knowledge."[90] However, the Court did not dismiss the case due to a lack of expert testimony because there were other facts, if accepted by the jury, that might define the standard of care and whether Defendant breached its duty.

Plaintiff, however, cites to *Richards v. Salvation Army*, where the Court found "there is no statute or case law mandating the use of an expert in security cases."[91] In *Richards*, there was a security guard on duty. The assailant walked past the security guard, walked up the stairs, and assaulted the plaintiff. The court found that it was not beyond the knowledge of a layperson to determine whether the defendant was negligent in its implementation of security measures.

The present case is similar to *Kaster*. If the premises liability claim regarding staffing and security survives the present Motion, then the jury would need to decide whether Defendant Sun Communities was negligent by failing to employ more workers and security guards. The number of staff or security for a resort like Massey's Landing is beyond the knowledge of a layperson. Mr. Monteith did not

---

[90] *Kaster v. Big Kahuna of Wilmington, Inc.*, 1999 WL 459135, at *2 (Del. Super. Ct. 1999).
[91] *Richards v. Salvation Army*, 1996 Del. Super. Lexis 292, at *2 (Del. Super. Ct. 1996) (*see also* Pl.'s Resp. to Defs.' Mot. for Summ. J., D.I. 115, Case Ex. F).

offer an opinion on the issue, and there are no facts in the case that would allow the jury to reach this decision without an expert. For these reasons, even if the security and staffing claim were properly pled, the claim would not survive the Motion for Summary Judgment due to a lack of expert testimony on the issue.

For these reasons, the Court must grant summary judgment on Plaintiff's premises liability claim against Defendant Sun Communities as it pertains to security and staffing issues. However, the Court must deny summary judgment for Plaintiff's premises liability claim as it pertains to Defendant Sun Communities' alleged negligence by failing to confiscate the golf carts and implement its own rules.

## CONCLUSION

For these reasons, the Motion for Summary Judgment is partially granted. Defendants' and Defendant D'Andrea's Motions in Limine are denied. Plaintiff's expert, Mr. Monteith is qualified to testify, and therefore, the negligence claims (Counts III and V) must survive the Motion. Summary judgment on Plaintiff's Count IV negligence claim against Sun Communities must be granted. The Court must grant Summary Judgment on Plaintiff's negligent entrustment claims (Counts VI and VII). Summary judgment on Plaintiff's premises liability claim for Defendant Sun Communities' alleged failure to enforce its own rules and procedures

is **DENIED**. However, summary judgment on Plaintiff's premises liability claim regarding security and staffing is **GRANTED**.

      **IT IS ORDERED.**

/s/ *Mark H. Conner*
Mark H. Conner, Judge


oc:    Prothonotary